District of Columbia, California. Good morning, Your Honors. Good morning. May it please the Court, I am Brian Brosnahan, representing the native plaintiffs and the 46,000 California policyholders in the class. If I may, I'd like to reserve four minutes for rebuttal. And you're splitting time? You're giving five minutes to... Ms. Wong is doing five minutes. Okay. Go ahead. Thank you, Your Honor. With respect to the UCL issue of whether the illustrations statute may be used as a predicate for an unlawfulness or unfairness claim under the unfair competition law, we briefed that in our papers, and I understand that Ms. Wong will address that in her argument. So I would like to proceed directly to the bait-and-switch claims. I will first explain how the Court erred, and then I will explain why it is so important. Now, LSW used an illustration here that was misleading as to both the guaranteed interest that would be paid and the fees that would be deducted from the policies. The illustration stated right up front that there was only one policy fee, and then it disclosed one fee, the monthly administrative or MAC charge. But in reality, the policy as delivered has several other substantial fees. The statement that there is only one policy fee is simply a lie. There's no getting around it, and in fact, the District Court's decision does not even mention it, even though it was one of the plaintiff's central claims. As for the guaranteed interest, the illustration plainly suggests that the policy credits guaranteed interest of either 2 or 2.5 percent, but that is also not true. In response, LSW argues that Proposition 64's reliance requirement eliminates liability for a bait-and-switch if the plaintiff is told the truth before committing to the purchase. That very argument was expressly rejected by the California Court of Appeal in Vera v. Banana Republic, decided last December and discussed in our Rule 28J letter. Vera follows the California Supreme Court's decision in Tobacco II, which held that the reliance requirement of the UCL is satisfied if the misleading material was a substantial factor in causing the plaintiff's decision to buy. The Vera court then held that the substantial factor test can be satisfied if the consumer sees the bait and then pursues the transaction, even if the consumer is told the truth before she purchases it. Now the bait, this case is a little confusing because it's procedurally, has a long procedural history, but the bait that you're talking about is what exactly? The policy illustration. The illustration, and what in it in the illustration is it that was so tempting to the buyer? Two things we would point to, Your Honor. One, policy fee. That's what the illustration says. And then it discloses one fee, and it has a listing of how much you'll pay over time. But that fee that is disclosed is only one of several fees. There are other fees that are not disclosed. And they are disclosed in the actual policy. In the actual policy. Are you arguing that reliance is necessary? Well, it is necessary that for the named plaintiffs that the misleading material has to have been a substantial factor. All right. So would you disagree that the district court's finding that the named plaintiffs worked closely with independent financial advisors and thoroughly educated themselves on the policy's features tends to negate the assumption that any misleading element in the illustrations was a substantial factor here that compelled the plaintiffs to purchase these policies? Not at all, Your Honor. All right. Tell me why. There was no testimony that the plaintiffs were given the amounts of the fees. There was testimony from the brokers. Well, there was a lot of testimony, though, that they were closely with independent financial advisors. Yes, but that doesn't mean they were given the information about what the fees were. And the plaintiffs testified that they thought that all of the fees were rolled up into the numbers that were shown in the illustration. And there was no testimony that's contrary to that. And I would point out also that the district court did not rely on any such disclosure. The district court relied solely on the fact that the information was found in the policy itself. Let me just ask a similar question, but with respect to the monthly administrative charge action. If we conclude that the district court clearly erred in finding that the illustrations' representation of the 11th year reduction in the monthly administrative charge was not misleading, do you agree that we would have to remand? I'm trying to figure out what we would do. Do you agree that we would have to remand this claim to the district court to determine whether this representation was a substantial factor? If Your Honor is asking whether with respect to the reduced or eliminated MAC charge, if the court disagrees with it, the trial court found that the illustration itself was clear. Right. And if the court were to disagree with that, then I believe that the record is clear, uncontradicted evidence that the plaintiffs relied on that and that it was a substantial factor. Where is that in the record? In the plaintiff's testimony. I can submit citations for the court if the court would like me to do that. If I can ask you about the expert, because I think your primary challenge to the district court's judgment with respect to the class claims, is that you or is that your colleague over here? Let me just ask you, and you can tell me if I need to. With respect to the class claims, it appears to be that the district court should have given more weight to the expert, your expert's statistical analysis. I'm just trying to figure out how we're in a position to really question that. It seems like, aren't we compelled to give the district court substantial deference with respect to its credibility determination and how it weighs the trial testimony? And I'm trying to figure out how we can afford more weight to your expert's testimony than the district court did. Your Honor, with respect to the volatility claim, which is what Your Honor is addressing, yes, this court does owe deference on that, but I think several things should be kept in mind. First, the district court either misheard or misremembered the testimony. The district court found that Dr. Brockett had testified that he did not look at lapse rates after year four. That is, in fact, not the case. He was only asked about the first four years. Second, the finding with respect to on that credibility issue concerned a background issue. It did not relate to his analysis of the Monte Carlo simulations, so it did not affect the core of his analysis. Third, it's not clear that the district court thought that the credibility issue was fatal to all of the testimony, and, in fact, the only issue that the district court specifically relied on the credibility finding for was that there was no statistical evidence that the policies were lapse-prone. But as we pointed out, the district court's definition of what was lapse-proneness was flawed because the court said you needed to compare the lapse rate or the propensity to lapse of these policies against other policies sold by other companies, and that is just simply not relevant to the claim. Your Honor, if I may, though, I would like to go back to the bait-and-switch claim because I need to get to the decertification issue because the bait-and-switch claim relates to the illustration subclass, and that was decertified, we believe, incorrectly. This Court's decision in Briseno, Justice Conagra Foods decided just a month ago and also referenced in our Rule 28J letter, makes clear that difficulties in identifying class members will not defeat class certification. There's simply no requirement that there be a feasible way to identify class members. Now, LSW claims that Briseno is irrelevant because the district court relied on a predominance analysis instead of an ascertainability analysis, but there are three reasons why that is incorrect. First, if reframing the ascertainability issue as a predominance issue could defeat the Briseno analysis, then it would have no meaning at all because you could always reframe the ascertainability issue as a predominance issue. Second, LSW's argument was expressly rejected in Sandusky v. Wellness Center's LLC, an Eighth Circuit case cited by, relied on by Briseno, which rejected exactly LSW's argument that you can reframe the ascertainability issue as a predominance issue. And third, the language of Rule 23b-3 on predominance also conflicts with LSW's position because Rule 23b-3 asks whether, quote, the questions of law, in fact, common to class members predominate over any questions affecting only individual members, close quote. So it takes class membership as given and then asks whether the issues are common or whether they're individual. You're at three minutes and 52 seconds. I didn't know, are you, is he into his partner's time or is that just his time? No, we have that separate. Okay, but you wanted to reserve four minutes. I did, Your Honor. Okay. So my time is up, Your Honor? For, if you want to reserve three minutes and 42 seconds. I will reserve, yes, Your Honor. Thank you. May it please the Court, Vivian Wong on behalf of the California Attorney General and the California Insurance Commissioner, Azumiki Kuriai. The Attorney General and the Commissioner are here today because private consumer actions are a critical supplement to their consumer protection efforts. Private plaintiffs may bring an unfair competition law claim based on the violation of almost any statute and the illustration statutes do not fit within the narrow Maradi-Shalal exception to this rule. That is because private actions based on violations of the illustration statutes do not raise any of the practical problems that were discussed extensively and led to the Maradi-Shalal decision. Today I'd like to do two things. First, I'd like to just emphasize that this Court's decision in Chabner v. United of Omaha Life Insurance Company is exactly on point and its approach should be followed in this case. Second, I'd like to address the arguments that LSW has made about the legislative history behind the illustration statutes and the Model Act on which they were based. Can I ask you, this is a, the illustration statute is based on a Model Act? Yes, it is. And how old is that Model Act? Do you have any idea how many states have it? So the Model Act I believe was finalized around 1996 or shortly before that and California actually adopted its own version based pretty much on the Model Acts. I think in late 1996 it became effective in 1997. Thank you. Other states have similar statutes? Other states, yes. Most, I would say more than 25 other states have some form of the Model Act right now. And do they also have unfair competition laws that are similar to California's? So most states do have some unfair competition law. California is fairly unique in having an unlawful prong of its unfair competition law that says it's actionable whenever you have a violation of any what we call predicate statute. I'm just wondering what applicability this has outside of California. Yes. And I gather it has not a lot maybe. In terms of the illustration statutes being UCL predicates, probably not a lot because most states don't have this unlawful prong. Okay. So you take issue with the district court's decision here on the illustration statutes? Correct. You think that the plaintiffs here could have brought it action? A UCL action under the unlawful prong based on violations of the illustration statutes, yes. Okay. And as opposed to the district court who said they couldn't? Correct. And tell us why. I mean in a simple, straightforward way in the two minutes. Yes. The primary reason is because the California Supreme Court has been clear in many cases that you can bring a UCL action based on the violation of any statute unless there is an affirmative prohibition. Something on the face of the statute or in a court decision, but something expressed that says a plaintiff cannot bring an action based on violations of these statutes or if there's a safe harbor, which isn't relevant here. Do you understand that the – is it your understanding that the district court held that you could not bring a UCL action if there was no private cause of action under the illustration statute? Correct. That is what the district court said, and it just gets the standards wrong. You don't look to see whether the statute authorizes expressly a private cause of action. Instead, you look for whether there's an express bar. Is a bar. Exactly. So this is the Rose case and some other cases in California? Correct. So Rose v. Bank of America, Zhang v. Superior Court, the two most recent cases, but if you go back, it's also from Stop Youth Addiction, Celtic. All of these cases say that you can bring a UCL action based on the violation of any statute unless that statute has something affirmatively prohibiting private action. Okay, and the relief that you can get under the UCL is equitable or restitution. Is that correct? Correct. You can get injunctive relief and or restitution. Private plaintiffs cannot get damages under UCL. Right. So what is the kind of restitution? What's at stake here that they could get? The restitution that most plaintiffs, I would think, would seek for violations of the illustration statutes is to have their premiums and all the costs that they've paid to the insurance company to have it back. So, again, I'd just like to emphasize that if you look through the illustration statutes, 10509.950 to .965, there's no provision that says that private actions are not allowed. And the Maradi Shalal decision that plaintiffs have tried, excuse me, that LSW has tried to rely on and analogize this case to simply isn't applicable because Maradi Shalal was really looking at extensive experience with problems that arose from allowing third-party claims against insurers for bad faith actions. So Maradi Shalal talks about how it would create a conflict of interest for insurers because they had duties to both their insured party and if private actions were allowed for third parties, to the third parties. It talked about multiplicative litigation and a lot of uncertainty. A lot of courts were struggling with how to apply the rule. Okay. And none of that is present here. Thank you. Thank you. Thank you. I'm sorry. I have the same cold I think some members of the panel have. May it please the Court, my name is Noah Levine and I represent the defendant, Life Insurance of the Southwest. After a three-week trial in which both a jury and the district court heard from plaintiffs, the agents who sold them their policies, and plaintiff's experts, the jury came back in two and a half hours with a verdict for my client. That covered what, the common law fraud claims? That covered the common law fraud claims. So these were, but to be clear, all of the theories of the claims overlap. So they were the same theories on the claims except they were brought as both fraud claims and as UCL claims. After the jury returned that verdict so quickly, the district court wrote a 71-page decision rejecting plaintiff's UCL claims. That decision includes approximately 40 pages of extensive findings of fact, all of which more than adequately dispose of plaintiff's claims in this case and include credibility findings about the expert and include credibility findings about the plaintiff's claims, saying that when they made contemporaneous complaints about their policies, after they had been in the policies for more than a year, they didn't raise any of the issues that they were raising in this case. I wanted to say to you that, oh, sure. Let me talk about some of the questions we were discussing with your colleagues across the aisle here. If a plaintiff, because I understand the facts, but we're trying to figure out if the judge got the law right on some of these claims. If a plaintiff were to bring a UCL claim under the unlawfulness prong, we've heard a little bit about that, that that's a little distinct here in California, based purely on a statutory violation, is there still actual reliance required on behalf of the plaintiff to establish that? Yes, if the nature of the claim is, one, about a deception or a misrepresentation, and that's actually spelled out very clearly in the Banana Republic v. Vera decision that they brought to you in their 28J letter, and it cites Kwikset, which is one of the leading decisions of the California Supreme Court on this. And these are the Tobacco II line of cases? And then that follows Tobacco and it follows Durrell as well. It appears to me, and that's why I wanted to give you a chance to talk about this, that the Tobacco II line of cases that you cite are limited to those UCL claims based solely on a fraud theory involving misrepresentations to consumers as opposed to a statutory violation and unlawfulness. California Supreme Court has dealt with that. I would refer you to the Kwikset decision, and I think it's specifically either footnote 8 or footnote 9 of that where it walks through this specifically. And it's all discussed in the Banana Republic decision, which they filed as a 28J letter. It will get you to the right part of Kwikset if I got the footnote wrong, but it explains that as long as the claim is one that is in the nature of a deception or a misrepresentation, you do have to show that. And I'm glad you pointed me to the argument that the California Attorney General is here to make and that they're making about the illustration statute because what I wanted to say is that I think on the actual claims, the district court rejecting the claims, the class claims, the individual claims, there are multiple findings of fact throughout. For example, and I'll come back to those, but I want to stay on the illustration statute first. I think the plaintiffs have tried to pull out three legal issues and portray this appeal as if it's really about three legal issues. When we don't think it is, we think the district court got it right on these issues, and we also don't think that any of them matter. I actually don't think you need to wade into this UCL issue at all, and I'll explain why as we've explained in our brief. The court said that just like the Zhang decision from the California Supreme Court, which says just because you can't bring a UIPA claim as an unlawful prong claim, you still can bring it for all other sorts of reasons. You can bring it because it's unlawful under another statute. You can even bring it as a fraudulent prong, which is exactly what your question suggests, Your Honor. They could have brought all of these claims as fraudulent prong claims because, in fact, if you look at the purpose section of the illustration statute, subsection 950, that's what the statute is about. It's about preventing people from being misled by their sales illustrations. He said you can bring those, and guess what? They did. If you go back and you look at the record, I think it's Record of Excerpt 464-13, that's the third amended complaint in which they set forth the illustration statute claims that they wanted to bring. Look through them. Every one of them, except for a few, are theories that they actually brought in this case. It's about how the illustrations were incomplete or about how things weren't described correctly. Okay, wait just a minute. Sure. If we assume that we agree with Ms. Wong that under California law, a claim can be brought under the UCL for violations of the illustration statute and that the district court erred when it said that there has to be a private cause of action under the illustration statute, then we assume that that is correct and the district court erred. Then your position is that their claims under the illustration statute are subsumed in the other rulings of the court, essentially? Is that what you're saying? It's two-part. I do want to speak to whether I think the district court got it correct, but let me tell you my argument on this. It's really two-part. It's that the district court gave them the opportunity to try the same theories under alternative ways, under the UCL itself. They could bring it as an unlawful prong claim for violation of Section 330 of the Insurance Code, but they also could have brought these all as fraudulent prong claims because the ultimate claim at the end of the day when you say an illustration didn't comply with this, it didn't describe this correctly, or it violated this part of the illustration statute, is to say I've been misled. I've been misled when I got that sales illustration. But the fact that they could have brought them under the fraud, but the district court said you can't bring them under the UCL, does that matter? No, it is under the UCL. It's the fraudulent prong claim of the UCL. I didn't mean just common law fraud. But I just am not sure that your argument is valid because it seems to be leading toward you don't need an illustration statute because you can get at any problems with illustrations under fraud, and I don't think that's correct. But, again, I don't want to confuse fraudulent prong and fraud, but I don't think that's correct. You need an illustration statute. You need these requirements. You can look at the legislative history that's in the appendices to our red brief, but what they say is that there are already remedies that exist out there in the legislative history of the NAIC statute. What would the plaintiffs have needed to have done? What was their mistake in bringing the illustration statutes in your view? Well, we don't think they were allowed to, so let me get back to why I actually think the district court was correct. Okay. We think the district court is correct. We think the attorney general is just wrong when, throughout their brief, they say that the only thing the California courts have ever said is that you can't bring a 790.03 subsection H claim. That's not right. That's what Zang was not a case about claim settlement procedures, and yet Zang, the California Supreme Court, said those claims could not be brought as an unlawful claim under the UCL. The same with manufacturer's life, which was the first one after Maradi Shalal that led to all of this. That was not about claim settlement procedures under subsection H. What Zang ultimately says, and what we rely on here, and what we have quoted here, is it says that when the legislature enacted the UIPA, it contemplated only administrative enforcement by the insurance commissioner. Private UIPA actions are absolutely barred. A litigant may not rely on the prescriptions of section 790.03 as the basis for a UCL claim. So why do we say that applies to the illustration statute? Because when the California legislature decided how the illustration statute would be enforced, they selected the administrative enforcement mechanism of the UIPA. We also point to the methodology that the Maradi Shalal court looked at. They looked to the legislative history, and they found that the California legislative history included no discussion of a private right of action, but did include a discussion only of administrative enforcement. The same is true of the illustration statute here. And in Maradi Shalal, the California Supreme Court also looked at the legislative history of the NAIC model code that was being adopted by California. And when you look at that here, what it shows is that they had concerns about allowing for a private right of action. So we think the district court was right, and it's not correct, by the way, to say in response to your question, Your Honor, the California attorney general said the district court relied solely on the absence of a private right of action. That's not right. At Record of Excerpt 478, page 4, he explains his decision, and he says Zhang unequivocally holds that where the legislature does not create a private right of action and instead opts for administrative enforcement by a government entity, a litigant may not rely on the statutory prohibition. He was trying very hard to follow Zhang, and so he gave them the opportunity to bring these claims still as fraudulent claims, which would not differ in any way. We made this argument in our brief. Plaintiffs do not point out any claim that they wanted to bring under the illustration statute that they could not have brought as a fraudulent prong claim still under the UCL, as a UCL claim. The only one they talk about is a claim that they say is under subsection 956E3 that has to do with what you need to describe in the policy if you're going to include a non-guaranteed element in the illustration. And you know what? They made that argument in their post-trial brief on the UCL. That's at Record of Excerpt 786, page 24. They argued that the disclosures were inadequate per se because the non-guaranteed MAC reduction is not described in the policy, California Insurance Code section 10509956E3. That's the only claim they said they couldn't bring, and yet they raised it in their post-trial brief. They were clearly able to do this. The fact that they chose not to shouldn't mean that this court has to get into this very complicated question on the UCL. We think that all of the California Supreme Court precedents point you in the right way. But nevertheless, I see you have a question. I was going to turn to the individual claims, but I want to make sure I answer your question first. I want to ask you a question regarding the district court's factual finding concerning the illustrations, whether the illustrations were misleading with respect to the monthly administrative charge. Sure. Okay. Despite the district court's finding, I just can't find any clear disclaimer indicating that this charge is not guaranteed to be reduced or eliminated after 10 years. And I just would ask you to identify exactly which disclaimer you believe the district court was referring to here, and if you could include a record site. I will. I have it right here for you. In terms of the record that's been submitted, it's in Volume 27 of 30, and it's TX4. So that means Exhibit 4, and it's page 20 of that. This is Ms. Spooner's illustration. This is what he was relying on. There are all caps, bold-faced. The page before, the MAC values are shown. On the very next page, it shows the MAC values only going for 10 years, and then the MAC value being zero after that. And on this page, it says this is an illustration only. An illustration is not intended to predict actual performance. And then here's the key language. Interest rates, dividends, or values that are set forth in this illustration are not guaranteed, except for those items clearly labeled as guaranteed. There is nothing in the illustration that says. But does this cover charges? Well, this is why I think it does, and that's why I was going to explain to you. Because interest rates, I mean, I think we're getting there, but you're not quite there because interest rates and dividends are clearly not charges, and values refers to the cumulated cash value of the policy. The district court sat through a three-week trial, heard how these were sold, heard how people understood them. He understood it the way we do, that in this column, these are values being shown. It doesn't say that after 10 years, your monthly administrative charge shall be reduced to zero. What it does is it just displays values. It has values for some, and it doesn't for others. So your response to my question on whether that's the same as charges is simply yes. Is that it is? Is that the way it is? And their argument is a very technical one, saying, well, the statute treats them differently. But we're talking about sales illustrations. We're not talking about people trying to parse statutory language. But I want to give you some more comfort on this. Let me just ask you a question. If we conclude, I don't know, but that the district court did err in finding that the monthly administrative charge was not represented in a misleading or deceptive manner, do we have to vacate the district court's judgment with respect to this claim? You do not. And I'm glad you asked because that's where I was headed. I want to give you comfort that it's been decided correctly in any event. As I said, the district court also made abundant findings of fact. And among those findings of fact, he said that the illustrations were used by the agents to discuss in depth how these were sold. After they were in the policy for a year, they contacted an agent and they wrote a complaint letter saying, I want out of this policy for these reasons. Not one of them was the MAC reduction charge not being guaranteed. In other words, the only time that they ever said that that was important to them in purchasing the policy was when they were on the stand. The district court made credibility findings about each one of the plaintiffs in different contexts. About Ms. Walker, he said that she claimed that she was trying to get out of the policy because of all the issues she had suddenly become aware of. He said, I do not credit that.  That is at page 38 of excerpt of record 791. He doesn't credit it. He said she was looking for a loophole to get out. As for Mr. Howlett and Ms. Spooner, he said that their complaint letter, they admitted on the stand, was full of overstatements, false statements that they knew to be untrue statements. And so I know he doesn't have a sentence in there. I'm not trying to pull the wool over your eyes and say he has a statement that says, therefore, I distrusted everything that they said. But this is essentially that. Well, let me ask you this because what was stated was not guaranteed. Were the interest rates, the dividends, and the values? Is that correct? That's correct. And what the illustration said was this administrative charge was only gone for 10 years. Now, are we talking about a UCL claim here? We are talking about a UCL deception claim. What you could get the remedy would be an injunction, which isn't of any use to them. We aren't talking about that here. That's right. Or restitution. So what would we be talking about here would be the administrative charge that was paid after 10 years. Well, that was my last point I wanted to make. The other reason he rejected their charge is because he said, the policies haven't been in effect in 10 years. They got out of their policy and they were never charged this fee. And, in fact, they never would have. He made a factual finding that the defendant's computers were already programmed to give this. So the only thing that they could get is if they said that the value of the policy was less by X because of this. And he doesn't credit that this was even an issue that was in their minds at all when they bought the policies. But I guess let me ask it a little differently. I mean, wouldn't the injury have occurred at the time the plaintiffs purchased their policies? That's what I was saying, but I don't – there's no – he's rejecting that it was relevant to their purchase of the policy. He just dropped court. Yeah. Now, I was very honest with you. He doesn't say, I find that the Mac was not relevant to them, but he has factual findings about both of them saying that when they sent complaints to my client, after being in their policies for over a year saying, I want out because of this, this was not listed. This was not one of the reasons that led them to buy the policy. Do you agree that a guaranteed reduction of a fee would make the policy more valuable than if the reduction fee was not guaranteed? It could. I don't know. I mean, it could, but that's what they have to support with evidence. I guess my basic point is we went through a three-week trial here where he got to see everybody. He got – when he makes an evaluation of whether or not this disclosure was likely to be misleading, he makes it within that entire context, and he heard the plaintiffs. He heard them testify. He heard why he didn't think they were all that credible, given that their complaints are completely inconsistent. That's why I think it's – this is right. I do want to address – I want to make sure I address a couple things. You asked a question about, you know, did plaintiffs really think that these were all the fees? And my opponent said, yes, they did. Well, it's not – that's not right. The bait was not just one policy fee here. There are findings of fact in the record that Mrs. Walker's agent discussed, and Ms. Walker understood the features of the policy, including the fees. You can find that at – in his decision, which is Record of Excerpt 791 at page 34. He says that they discussed the charges and fees. The same with Mr. Howlett and Ms. Spooner. His finding is that these discussions made clear that the life insurance policies being described would include charges associated with the policy, including mortality and expense charges. Additionally, their agent described to them all of the charges and fees associated with the policies. He also made a finding that that's just what the agents were trained to do. And these were individualized presentations, as I understand. That's correct. They were all individualized presentations. The other thing I wanted to make sure I addressed before I sat down was my opponent said the district court may have been confused as to whether his credibility finding on Dr. Brockett really influenced his entire finding about Dr. Brockett. It surely did. This is at page 53 of the same Record of Excerpt of 791. He said that this concession by Dr. Brockett, that his testimony was certainly misleading, not only detracts from the probative value of Dr. Brockett's opinion regarding a class-wide volatility defect, it also considerably undermines Dr. Brockett's overall credibility. The court therefore concludes that plaintiffs have offered no reliable or valid statistical evidence to establish that Paragon and Provider policies purchased by the class are prone to lapse. And that is only one of ten reasons we point out in our brief why the district court rejected the class claims. We think that his findings of fact on that and on the individual claims were not clearly erroneous. They were permissible views of the evidence, even if this court may think that there was another permissible view. And for that reason, we think that the judgment should be affirmed. Thank you very much. Thank you, Your Honors. If I may begin, it is true that there was a three-week trial, but I have to point in a lengthy opinion, but I have to point out that almost all of that was about the volatility claim because the court threw out our illustration statute-based claims at the beginning of the case, and then it wrongly decertified the class on the bait-and-switch claims. So that forced the trial to be mostly about volatility. I think the court will find only two or three pages where the district court, in its opinion, deals with the bait-and-switch claims, and there it wrongly held that because the information was in the policy, that cured the deception in the illustrations. That is inconsistent with VERA, also with Chern v. Bank of America, Rubio v. Capital One Bank, Williams v. Gerber Products. We cited all of those cases and argued them extensively to the district court. They are not even mentioned in the district court's decision. So we believe the court clearly erred with respect to the bait-and-switch claims. Now, and I have to point out that if the court looks at the testimony that counsel just cited regarding what the plaintiffs were told, the agent said, oh, I described the fact that there were different kinds of fees, but nothing contradicted the testimony of the plaintiffs that when they looked at the illustration, they believed that all of the fees were rolled up in the number that was shown in that MAC charge column. But, in fact, all the fees are not rolled up in that MAC charge column. So there's nothing that contradicts the plaintiff's testimony with respect to that. I'll point out also on the reliance issue, and going back to Your Honor's question about reliance, reliance can be presumed from materiality. So we don't need to remand anything. If these fees, and whether they're guaranteed or not guaranteed as material, you can presume reliance. That's in in-rate tobacco. Two cases, the court so held. And the reliance in the case of bait-and-switch is only that you see the bait and pursue the transaction, as held in VERA. Here, they saw the illustration. They pursued the transaction by submitting applications, undergoing medical examinations. After all that was done, they get the policy, which has the true information about the fees. And that does not cure the deception of the bait-and-switch, which had misrepresentations and omissions in the illustration. Now, counsel has essentially argued that the inability that we faced to pursue the illustration's statutory-based claims is harmless error. That is wholly incorrect. First of all, there are some of the statutory claims that are not overlapping with the fraudulent prong claims. And one of them is 10509.955E3, that counsel referenced. Under that statute, you cannot have a non-guaranteed element in an illustration unless you describe it in the policy. These non-guaranteed elements, such as the reduction of the MAC charge, such as the two or two-and-a-half percent interest, which was not actually guaranteed, you can't even show those in an illustration if they're not in the policy. So it was per se unlawful. Can I just ask you one last question because your time is just about gone? Yes, Your Honor. The illustration statute is a very detailed statute, and it's administered primarily by the commissioner in the insurance department in California. Is that correct? The administration of it. Yes, Your Honor. I don't know the extent to which they actually have proceedings. And, in fact, in their brief, they say they need help enforcing that statute. Yeah, okay, that's fine. So is there any other case under the UCL that has been brought that alleges violations of the illustration statute? The only one that I'm personally aware of, Your Honor, is the Kroll case, which was also against LSW and disposed of by Judge Selma on the same, we believe, flawed basis. It's a companion to the UCL? No, it was unrelated to our case, but it was also against LSW. But it's not reported? No, it is discussed in the papers because it was Judge Selma's case. Because he cited it, but it's not reported otherwise. I don't believe so, Your Honor. All right. May I make one? One last statement. And that is that the illustration statute is clear that you can't have a misrepresentation in an illustration. So Judge Selma's rationale for defeating the claim under the fraudulent prong, which was it's in the policy, that defense by LSW, that doesn't even apply to claims that are predicated on the illustration statute because the illustration statute says you can't have a misleading illustration. Thank you. Thank you, Your Honor. I want to thank both sides for some excellent arguments here today. I really appreciate it. It looks like you were all very well prepared and able to answer all the questions. Thank you very much. The matter of Joyce Walker v. Life Insurance Company of the Southwest is submitted.
judges: Schroeder, Pregerson, Murguia